**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY, successor by merger to SUNTRUST BANK,

Plaintiff,

v.

NANTICOKE HEALTH SERVICES, INC., MICHAEL JAMES WARD, TAREK M. WAKED HAMMOUD, MANONMANI ANTONY, ALLEN MIRZAEI, SAMUEL K. MILLER, CLAUDE J. DIMARCO, WILLIAM ROBERT DORAN, BRADLEY LEMON and MICHAEL J. MUNRO,

Defendants.

Civil Action No. ________________

**COMPLAINT**

Plaintiff Truist Bank f/k/a Branch Banking and Trust Company, as successor by merger to SunTrust Bank ("Truist" or "Plaintiff") hereby files its Complaint for Damages against Nanticoke Health Services, Inc., Michael James Ward, Tarek M. Waked Hammoud, Manonmani Antony, Allen Mirzaei, Samuel K. Miller, Claude J. Dimarco, William Robert Doran, Bradley Lemon, and Michael J. Munro (collectively, "Defendants"), as follows:

## I. PARTIES, JURISDICTION AND VENUE

1. Truist is a state-chartered bank incorporated in North Carolina and has its principal place of business located in North Carolina. Accordingly, Truist is a citizen of North Carolina. On December 6, 2019, SunTrust Bank merged into Branch Banking and Trust Company, with Branch Banking and Trust Company continuing as the surviving entity. On December 7, 2019, Branch Banking and Trust Company changed its name to Truist Bank.

2. Defendant Nanticoke Health Services, Inc. ("NHS") is a corporation organized under the laws of the State of Delaware with its principal place of business in Delaware. Accordingly, NHS is a citizen of Delaware. NHS may be served at its registered office located at 801 Middleford Road, Seaford, DE, 19973.

3. Defendant Michael James Ward ("Ward") is an individual citizen of Maryland. Ward may be served at 7917 Fort Stokes Ln., Easton, MD 21601, or wherever else he may be found.

4. Defendant Tarek M. Waked Hammoud ("Hammoud") is an individual citizen of Delaware. Hammoud may be served at 6 Tidewater Dr., Seaford, DE 19973, or wherever else he may be found.

5. Defendant Manonmani Antony ("Antony") is an individual citizen of Delaware. Antony may be served at 316 Planters Dr., Seaford, DE 19973, or wherever else he may be found.

6. Defendant Allen Mirzaei ("Mirzaei") is an individual citizen of Delaware. Mirzaei may be served at 32198 Ivory Gull Way, Millsboro, DE 19966, or wherever else he may be found.

7. Defendant Samuel K. Miller ("Miller") is an individual citizen of Delaware. Miller may be served at 122 S. Delaware Ave., Seaford, DE 19973, or wherever else he may be found.

8. Defendant Claude J. DiMarco ("DiMarco") is an individual citizen of Delaware. DiMarco may be served at 24 Tidewater Dr., Seaford, DE 19973, or wherever else he may be found.

9. Defendant William Robert Doran ("Doran") is an individual citizen of Delaware. Doran may be served at 9533 Cedar Ln., Seaford, DE 19973, or wherever else he may be found.

10. Defendant Bradley Lemon ("Lemon") is an individual citizen of Delaware. Lemon may be served at 105 Tidewater Ct., Seaford, DE 19973, or wherever else he may be found.

11. Defendant Michael J. Munro ("Munro," collectively, the "Defendants") an individual citizen of Delaware. Munro may be served at 31782 Vantage Point Ln., Dagsboro, DE 19939, or wherever else he may be found.

12. This Court has original jurisdiction of this case pursuant to 28 U.S.C. § 1332(a) because the amount in controversy is greater than $75,000, exclusive of interests and costs, and complete diversity exists between Plaintiff, on the one hand, and Defendants, on the other.

13. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2).

## II. FACTUAL BACKGROUND

### THE NOTES AND GUARANTEES

14. On or about September 26, 2017, Nanticoke Surgical Center, LLC ("Borrower") executed and delivered to Plaintiff that certain Commercial Note in the original principal amount of $1,255,000.00 and Agreement to Commercial Note, as modified by, amongst other things, that certain Second Amendment to Commercial Note dated February 26, 2019 (as amended, modified, restated or supplemented, "Note 34"). A true and correct copy of Note 34 is attached as composite Exhibit A and incorporated herein.

15. Additionally, on or about September 26, 2017, the Borrower executed and delivered to Plaintiff that certain Commercial Note in the original principal amount of $1,445,000.00 and Agreement to Commercial Note, as modified by, amongst other things, that certain Second Amendment to Commercial Note dated February 26, 2019 (as amended, modified, restated or supplemented, "Note 75" and along with Note 34, the "Notes"). A true and correct copy of Note 75 is attached as composite Exhibit B and incorporated herein.

16. The Notes are guaranteed by, amongst other things, that certain Amended and Restated Limited Unconditional Guaranty executed by NHS in favor of Plaintiff dated October 23,

2019 (the "NHS Guaranty"). A true and correct copy of the NHS Guaranty is attached hereto as Exhibit C.

17. Pursuant to the NHS Guaranty, NHS absolutely and unconditionally guaranteed the aggregate sum of 51% of the Obligations (as defined in the guaranty) of Borrower to Plaintiff, including without limitation, the amounts owing under the Notes, any costs of preserving, protecting or disposing of any collateral securing the Notes, and all charges and expenses, including court costs and reasonable attorneys' fees paid or incurred by Plaintiff in endeavoring to collect on the Notes or any part thereof or in enforcing the guaranty.

18. The Notes are further guaranteed by, amongst other things, that certain Amended and Restated Unconditional Guaranty executed by Hammoud in favor of Plaintiff dated October 23, 2019 (the "Hammoud Guaranty"). A true and correct copy of the Hammoud Guaranty is attached hereto as Exhibit D.

19. Pursuant to the Hammoud Guaranty, Hammoud absolutely and unconditionally guaranteed the aggregate sum of 11.06% of the Obligations (as defined in the guaranty) of Borrower to Plaintiff, including without limitation, the amounts owing under the Notes, any costs of preserving, protecting or disposing of any collateral securing the Notes, and all charges and expenses, including court costs and reasonable attorneys' fees paid or incurred by Plaintiff in endeavoring to collect on the Notes or any part thereof or in enforcing the guaranty.

20. The Notes are further guaranteed by, amongst other things, that certain Amended and Restated Unconditional Guaranty executed by Ward in favor of Plaintiff dated October 23, 2019 (the "Ward Guaranty"). A true and correct copy of the Ward Guaranty is attached hereto as Exhibit E.

21. Pursuant to the Ward Guaranty, Ward absolutely and unconditionally guaranteed the aggregate sum of 3.95% of the Obligations (as defined in the guaranty) of Borrower to Plaintiff, including without limitation, the amounts owing under the Notes, any costs of preserving, protecting or disposing of any collateral securing the Notes, and all charges and expenses, including court costs and reasonable attorneys' fees paid or incurred by Plaintiff in endeavoring to collect on the Notes or any part thereof or in enforcing the guaranty.

22. The Notes are further guaranteed by, amongst other things, that certain Unconditional Guaranty executed by Antony in favor of Plaintiff dated September 26, 2017 (the "Antony Guaranty"). A true and correct copy of the Antony Guaranty is attached hereto as Exhibit F.

23. Pursuant to the Antony Guaranty, Antony absolutely and unconditionally guaranteed the aggregate sum of 4.74% of the Obligations (as defined in the guaranty) of Borrower to Plaintiff, including without limitation, the amounts owing under the Notes, any costs of preserving, protecting or disposing of any collateral securing the Notes, and all charges and expenses, including court costs and reasonable attorneys' fees paid or incurred by Plaintiff in endeavoring to collect on the Notes or any part thereof or in enforcing the guaranty.

24. The Notes are further guaranteed by, amongst other things, that certain Unconditional Guaranty executed by Mirzaei in favor of Plaintiff dated September 26, 2017 (the "Mirzaei Guaranty"). A true and correct copy of the Mirzaei Guaranty is attached hereto as Exhibit G.

25. Pursuant to the Mirzaei Guaranty, Mirzaei absolutely and unconditionally guaranteed the aggregate sum of 3.16% of the Obligations (as defined in the guaranty) of Borrower to Plaintiff, including without limitation, the amounts owing under the Notes, any costs of

preserving, protecting or disposing of any collateral securing the Notes, and all charges and expenses, including court costs and reasonable attorneys' fees paid or incurred by Plaintiff in endeavoring to collect on the Notes or any part thereof or in enforcing the guaranty.

26. The Notes are further guaranteed by, amongst other things, that certain Unconditional Guaranty executed by DiMarco in favor of Plaintiff dated September 26, 2017 (the "DiMarco Guaranty"). A true and correct copy of the DiMarco Guaranty is attached hereto as Exhibit H.

27. Pursuant to the DiMarco Guaranty, DiMarco absolutely and unconditionally guaranteed the aggregate sum of 6.32% of the Obligations (as defined in the guaranty) of Borrower to Plaintiff, including without limitation, the amounts owing under the Notes, any costs of preserving, protecting or disposing of any collateral securing the Notes, and all charges and expenses, including court costs and reasonable attorneys' fees paid or incurred by Plaintiff in endeavoring to collect on the Notes or any part thereof or in enforcing the guaranty.

28. The Notes are further guaranteed by, amongst other things, that certain Unconditional Guaranty executed by Miller in favor of Plaintiff dated September 26, 2017 (the "Miller Guaranty"). A true and correct copy of the Miller Guaranty is attached hereto as Exhibit I.

29. Pursuant to the Miller Guaranty, Miller absolutely and unconditionally guaranteed the aggregate sum of 6.32% of the Obligations (as defined in the guaranty) of Borrower to Plaintiff, including without limitation, the amounts owing under the Notes, any costs of preserving, protecting or disposing of any collateral securing the Notes, and all charges and expenses, including court costs and reasonable attorneys' fees paid or incurred by Plaintiff in endeavoring to collect on the Notes or any part thereof or in enforcing the guaranty.

30. The Notes are further guaranteed by, amongst other things, that certain Unconditional Guaranty executed by Doran in favor of Plaintiff dated September 26, 2017 (the "Doran Guaranty"). A true and correct copy of the Doran Guaranty is attached hereto as Exhibit J.

31. Pursuant to the Doran Guaranty, Doran absolutely and unconditionally guaranteed the aggregate sum of 6.32% of the Obligations (as defined in the guaranty) of Borrower to Plaintiff, including without limitation, the amounts owing under the Notes, any costs of preserving, protecting or disposing of any collateral securing the Notes, and all charges and expenses, including court costs and reasonable attorneys' fees paid or incurred by Plaintiff in endeavoring to collect on the Notes or any part thereof or in enforcing the guaranty.

32. The Notes are further guaranteed by, amongst other things, that certain Unconditional Guaranty executed by Lemon in favor of Plaintiff dated September 26, 2017 (the "Lemon Guaranty"). A true and correct copy of the Lemon Guaranty is attached hereto as Exhibit K.

33. Pursuant to the Lemon Guaranty, Lemon absolutely and unconditionally guaranteed the aggregate sum of 3.16% of the Obligations (as defined in the guaranty) of Borrower to Plaintiff, including without limitation, the amounts owing under the Notes, any costs of preserving, protecting or disposing of any collateral securing the Notes, and all charges and expenses, including court costs and reasonable attorneys' fees paid or incurred by Plaintiff in endeavoring to collect on the Notes or any part thereof or in enforcing the guaranty.

34. The Notes are further guaranteed by, amongst other things, that certain Unconditional Guaranty executed by Munro in favor of Plaintiff dated September 26, 2017 (the "Munro Guaranty" and, collectively with the NHS Guaranty, the Hammoud Guaranty, the Ward

Guaranty, the Antony Guaranty, the Mirzaei Guaranty, the DiMarco Guaranty, the Miller Guaranty, the Doran Guaranty, and the Lemon Guaranty, the "Guarantees"). A true and correct copy of the Munro Guaranty is attached hereto as Exhibit L.

35. Pursuant to the Munro Guaranty, Munro absolutely and unconditionally guaranteed the aggregate sum of 3.95% of the Obligations (as defined in the guaranty) of Borrower to Plaintiff, including without limitation, the amounts owing under the Notes, any costs of preserving, protecting or disposing of any collateral securing the Notes, and all charges and expenses, including court costs and reasonable attorneys' fees paid or incurred by Plaintiff in endeavoring to collect on the Notes or any part thereof or in enforcing the guaranty.

36. Each of the Guarantees is a guaranty of payment and not of collection and pursuant to the terms of the Guarantees, each Guarantor has waived any right to require that any action be brought against Borrower or any other person or to require that resort be had to any security securing the Obligations (as defined in the Guarantees).

37. Plaintiff is the current holder of the Notes and Guarantees, and all documents executed in connection therewith or pursuant thereto (collectively, the "Loan Documents") with all rights to enforce same.

## BORROWER'S CESSATION OF BUSINESS OPERATIONS, THE BANKRUPTCY CASE AND DEFAULTS

38. In July, 2020, Borrower informed Plaintiff that it was ceasing its business operations following its closure in March, 2020 as a result of the COVID-19 pandemic.

39. On July 3, 2020, Borrower filed a voluntary petition seeking relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 20-11766 (JTD) (the "Bankruptcy Case").

40. The Note 34 is in default as a result of, among other things, Borrower's filing of the Bankruptcy Case, the termination of Borrower's business operations and the failure to pay the amounts owing under Note 34 as and when due.

41. The Note 75 is in default as a result of, among other things, Borrower's filing of the Bankruptcy Case, the termination of Borrower's business operations and Borrower's failure to pay the amounts owing under Note 75 as and when due.

42. Defendants each failed to pay the amounts owing under their respective Guarantees as and when due and are in default under their respective Guarantees.

43. By letter dated August 25, 2020, Plaintiff provided Notice of Default to Defendants as a result of Defendants' defaults under the Loan Documents and demanded the immediate payment of all amounts due and owing under the Loan Documents (the "Notice of Default"). A true and correct copy of Notice of Default is attached hereto as Exhibit M.[1]

44. The Notice of Default further notified Defendants that Plaintiff intended to enforce the attorneys' fees provisions in the Loan Documents.

45. Defendants did not pay all amounts due and owing under the Loan Documents following receipt of the Notice of Default.

46. On September 9, 2020, Plaintiff was granted relief from the automatic stay in the Bankruptcy Case to exercise its right of setoff in a deposit account maintained by Borrower with

[1] The August 25, 2020 Notice of Default was also sent to Surgical Center Development #3, LLC as a guarantor of the Notes. The Notice of Default, however, was sent to Surgical Center Development #3, LLC in error as Surgical Center Development #3, LLC was released as a guarantor of the Notes in October 2019, following its sale of its ownership percentage in Borrower. Following the release of Surgical Center Development #3, LLC as guarantor, Plaintiff received an enhanced guaranty from NHS dated October 23, 2019, guaranteeing 51% of the Obligations, as more fully referenced above. Accordingly, the Notice of Default has been withdrawn as to Surgical Center Development #3, LLC.

Plaintiff in the amount of $372,904.33, which amount has been applied by Plaintiff to reduce the indebtedness owed under the Notes.

47. As of December 1, 2020, the outstanding amount owing on Note 34, exclusive of default interest, costs and attorneys' fees was not less than $644,491.20, constituting principal in the amount of $617,387.90, accrued but unpaid interest in the amount of $25,315.61, late fees of $1,787.69, and per diem interest after December 1, 2020, and through judgment in the amount of $71.17.

48. As of December 1, 2020, the outstanding amount owing on Note 75, exclusive of default interest, costs and attorneys' fees was not less than $1,236,713.23, constituting principal in the amount of $1,200,278.39, accrued but unpaid interest in the amount of $33,516.65, late fees of $2,918.19, and per diem interest after December 1, 2020 and through judgment in the amount of $135.03.

## III. CAUSES OF ACTION

### COUNT I
Breach of the Guarantees

49. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 48.

50. Guarantors are in default of their obligations under their respective Guarantees for failing to pay amounts owing under the Notes as and when due.

51. Guarantors are liable to Plaintiff on the Guarantees for their respective percentages of the outstanding amount owing on Note 34, in an amount not less than $644,491.20, constituting principal in the amount of $617,387.90, accrued but unpaid interest in the amount of $25,315.61, late fees of $1,787.69, and per diem interest after December 1, 2020, and through judgment in the amount of $71.17.

52. Guarantors are liable to Plaintiff on the Guarantees for their respective percentages of the outstanding amount owing on Note 75, in an amount not less than $1,236,713.23, constituting principal in the amount of $1,200,278.39, accrued but unpaid interest in the amount of $33,516.65, late fees of $2,918.19, and per diem interest after December 1, 2020 and through judgment in the amount of $135.03.

**COUNT II**
Attorneys' Fees and Expenses

53. Guarantors re-alleges and incorporates by reference the allegations in Paragraphs 1 through 52.

54. Plaintiff are liable to Plaintiff for its attorneys' fees, and costs under the Loan Documents.

**NOW WHEREFORE**, Plaintiff prays for the following relief:

(a) that summons issue as to Defendants;

(b) that final judgment be entered against each Defendant for breach of their respective Guarantees in the amount of their respective percentage of the outstanding amount owing on Note 34, in an amount not less than $644,491.20, constituting principal in the amount of $617,387.90, accrued but unpaid interest in the amount of $25,315.61, late fees of $1,787.69, and per diem interest after December 1, 2020, and through judgment in the amount of $71.17;

(c) that final judgment be entered against each Defendant for breach of their respective Guarantees in the amount of their respective percentage of the outstanding amount owing on Note 75, in an amount not less than $1,236,713.23, constituting principal in the amount of $1,200,278.39, accrued but unpaid interest in the amount of $33,516.65, late fees of $2,918.19, and per diem interest after December 1, 2020 and through judgment in the amount of $135.03;

(d) that such final judgment include an award for Plaintiff attorneys' fees and costs;

(e) an order taxing all costs on Defendants;

(f) post-judgment interest at the Default Rate as provided for in the Loan Documents; and

(g) for all other relief this Court deems proper.

Dated: December 3, 2020

**BURR & FORMAN LLP**

*/s/ J. Cory Falgowski*
J. Cory Falgowski (No. 4546)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
Telephone: (302) 830-2312
Facsimile: (302) 397-2566
Email: jfalgowski@burr.com

- and -

Valerie K. Richmond
Brian J. Levy
171 17th Street, NW, Suite 1100
Atlanta, GA 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244
Email: vrichmond@burr.com; blevy@burr.com

COUNSEL FOR PLAINTIFF TRUIST BANK f/k/a BRANCH BANKING AND TRUST COMPANY, SUCCESSOR BY MERGER to SUNTRUST BANK